# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **BRENDA K. BOBBITT,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10CV00058 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Ginger J. Largen, Morefield & Largen, P.L.C., Abingdon, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Stephen M. Ball, Assistant Regional Counsel, and Kenneth DiVito, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this Social Security disability case, I affirm the final decision of the Commissioner.

I

Plaintiff Brenda K. Bobbitt filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB") and social security income ("SSI") benefits pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§

401-433, 1381-1383d (West 2003 & Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Bobbitt filed for benefits in October 2003, alleging disability since October 18, 2002, due to multiple exertional and nonexertional impairments, including knee and back pain, depression, and anxiety. Her claim was denied initially and upon reconsideration. Bobbitt received a hearing before an administrative law judge ("ALJ"), during which Bobbitt, represented by counsel, and a vocational expert ("VE") testified. The ALJ denied Bobbitt's claim and the Social Security Administration's Appeals Council denied her Request for Reconsideration. Bobbitt then filed a Complaint with this court, objecting to the Commissioner's final decision.

After consideration, Bobbbit's case was remanded by this court to the Commissioner for further findings. *Bobbitt v. Barnhart*, No. 1:06CV00056, 2007 WL 178228, at *1 (W.D. Va. Jan. 23, 2007) (Sargent, J.). The court found that the ALJ had failed to properly consider the assessment of Belinda G. Overstreet, Ph.D., a licensed clinical psychologist, who evaluated Bobbitt's mental capacities at the request of Bobbitt's attorney. *Id.* at *6.

Thereafter, Bobbitt received a second hearing before an ALJ in March 2008, and her case was determined by decision dated May 30, 2008. The ALJ found that Bobbitt retained the residual functional capacity to perform light, unskilled work with no public interaction in a low-stress work environment. Because such work existed in significant numbers in the national economy, the ALJ found that Bobbitt was not disabled. Bobbitt appealed to the Social Security Administration's Appeals Council, who denied her Request for Reconsideration. Bobbitt then filed a Complaint with this court on September 21, 2010, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed and orally argued the issues. The case is ripe for decision.

II

Bobbitt was fifty-three years old when she filed for benefits, a person of "younger age" under the regulations. *See* 20 C.F.R. § 404.1563(c) and §416.963(c) (2010). Bobbitt, who has an eighth-grade level of education, has previously worked as a certified nurse's assistant, cleaner/health care worker, short-order cook, cloth inspector, motel housekeeper, and cook. Bobbitt has not engaged in substantial gainful activity since October 2002.

Bobbitt's medical history and impairments are thoroughly described in Judge Sargent's prior opinion, and I incorporate them by reference. See *Bobbitt*, 2007 WL 178228, at *2-5. In brief summary, Bobbitt suffered an injury to her right knee when she fell at her workplace in June 2002. In October 2002, Bobbitt fell again at her home, injuring her lumbar spine at L2-3 and L3-4. Bobbitt subsequently underwent arthroscopic surgery on her knee and received additional treatment in the form of steroidal injections, physical therapy, and medicative therapy.

Bobbitt also presented evidence of mental impairments, specifically depression, anxiety, and panic disorder. Bobbitt sought medicative treatment for these conditions from her general treating sources and also more specialized mental health counseling through Mount Rogers Community Counseling Services.

In the prior opinion, Judge Sargent found that the ALJ inappropriately discounted an evaluation of Bobbitt performed on August 11, 2005, by Dr. Overstreet. *Id.* at *6. Dr. Overstreet opined that Bobbitt suffered from generalized anxiety disorder, overlaid by post-traumatic stress disorder, chronic dysthymia, panic disorder with emerging agoraphobia and avoidant personality disorder. Dr. Overstreet assessed Bobbitt with a GAF score of 45.[1] Dr. Overstreet also

---

[1] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or

completed a mental assessment indicating that Bobbitt had a more than satisfactory ability to follow work rules, to use judgment in non-social situations, to understand, remember, and carry out simple instructions, and to maintain personal appearance. However, Dr. Overstreet indicated that Bobbitt was seriously limited in her ability to use judgment in social situations, to interact with supervisors, and to deal with work stresses. Dr. Overstreet also found serious limitations in Bobbitt's abilities to maintain attention/concentration, to understand, remember and carry out complex and detailed instructions, and to behave in an emotionally stable manner and to demonstrate reliability. Dr. Overstreet found that Bobbitt had no useful ability to relate to co-workers, to deal with the public, or to relate predictably in social situations.

Judge Sargent found that the ALJ erred by relying on the assessments of the state agency reviewing psychologists rather than the opinions of Bobbitt's treating sources at Mount Rogers and Dr. Overstreet. 2007 WL 178228, at *6. Judge Sargent noted that the ALJ did not have the benefit of these records in his evaluation, and that the ALJ's finding that Bobbitt suffered only moderate limitations on her

---

school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in social, occupational, or school functioning. See Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

social functioning, concentration, persistence, and pace was therefore not supported by substantial evidence in the record.

On remand, the ALJ found that Bobbitt suffered from the following severe impairments: degenerative joint disease, post-traumatic stress disorder, and affective disorder. Despite this finding, the ALJ found that Bobbitt's impairments did not meet the listing level. (R. at 626.) Even taking Bobbitt's severe impairments into account, the ALJ found that Bobbitt could perform a limited range of light work that would not require climbing or exposure to heights or other hazards. Furthermore, he noted that Bobbitt was "impeded by additional limitations," and accordingly restricted her to low-stress environments involving no stressful (production-type) work and no public interaction. (*Id.* at 626, 632.)

The VE testified that someone with Bobbitt's residual functional capacity, age, and work history could perform a limited range of light level work in occupations such as a garment/laundry laborer or a cleaner. (*Id.* at 632.) According to the VE, there are approximately 70,000 such jobs in the region and 907,000 jobs in the national economy. The VE acknowledged that these occupations required good use of the hands, the ability to stand for most of the workday, but minimal interaction with co-workers, and only some interaction with supervisors. (*Id.* at 632.) Relying on this testimony, the ALJ concluded that

Bobbit was able to perform work that existed in significant numbers in the national economy and was therefore not disabled under the Act.

Bobbitt now challenges the ALJ's unfavorable ruling, arguing that the decision is not supported by substantial evidence. For the reasons detailed below, I disagree.

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A) (2010).

In assessing DIB and SSI claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to past relevant work; and (5) if not, whether [s]he could perform other work

present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2010). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

This court's review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard was applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including

inconsistencies in the evidence.  It is not the role of this court to substitute its judgment for that of the Commissioner.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

On appeal, Bobbitt argues that substantial evidence does not support the ALJ's finding that Bobbitt could perform the jobs suggested by the VE, despite her physical and mental limitations.  Bobbitt argues that the ALJ did not properly consider the cumulative effects of her impairments and that the ALJ once again improperly accorded little weight to several of Bobbitt's evaluating sources.

Specifically, Bobbitt's current appeal focuses on her mental impairments. She argues that the ALJ's decision was not supported by substantial evidence because the ALJ did not accord proper weight to the consultative opinions of Dr. Overstreet and Pamela S. Tessnear, Ph.D.  They both found severe limitations to Bobbitt's mental capacities in the work environment.  However, the ALJ accorded little weight to their opinions as "inconsistent with the overall record, including treatment notes showing [Bobbitt] is doing well."  (R. at 630.)  Bobbitt argues that this finding was in error, and that the ALJ improperly relied on the opinions of the VE and the state agency reviewing psychologist.

A treating physician's medical opinion will be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2010). However, the ALJ has "the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). In the case of a consultative source, the ALJ has even wider discretion, because only a treating source's opinion is entitled to controlling weight. 20 C.F.R. §§404.1527(d); 416.927(d); *see also Sykes v. Apfel*, 228 F.3d 259, 266 n.7 (3d Cir. 2007).

In the present case, the ALJ rejected Dr. Overstreet's and Dr. Tessnear's assessments of the impact of Bobbitt's impairments on her ability to perform work-related functions. Although these doctors found Bobbitt to be severely or moderately impaired in all areas assessed under the agency forms, these findings contradicted records indicating that Bobbitt's mental conditions improved with treatment. Specifically, Marlon Anthony Graham, M.D., treated Bobbitt from June 2006 through December 2007, and Dr. Graham's findings noted that Bobbitt had improved from a clinical standpoint under the benefit of counseling and medicative therapy. Moreover, Bobbitt herself denied symptoms of PTSD following treatment. Lastly, the state agency consultative examinations contradicted Dr. Overstreet's and Dr. Tessnear's assessments. Given these conflicting records, the

ALJ was within his discretion to reject the one-time consultative opinions favoring Bobbitt's case. Accordingly, I find that substantial evidence supports the ALJ's determination that these opinions be granted little weight.

Moreover, I note that the ALJ recognized that Bobbitt continues to suffer from severe mental impairments, despite the improvements she has gained with treatment. The ALJ's evaluation reflects considerable effort to account for these impairments in Bobbitt's residual functional capacity assessment. The record supports the ALJ's evaluation that Bobbitt's impairments may be accounted for by limiting her interactions with co-workers and supervisors, as well as limiting the mental complexities of her work duties. As a result, I also find that the ALJ's ultimate determination as to Bobbitt's disability status is supported by substantial evidence in the record.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: April 26, 2011

/S/   JAMES P. JONES
United States District Judge